UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| CARLOS CHANG-CRUZ, | : | |
| --- | --- | --- |
| Petitioner, | : | Civ. No. 12-7167 (KM) |
| v. | : | OPINION |
| ROY L. HENDRICKS, | : | |
| Respondent. | : | |

**KEVIN McNULTY, U.S.D.J.**

## I.  INTRODUCTION

Petitioner, Carlos Chang-Cruz, was previously incarcerated at the Essex County Correctional Facility in Newark, New Jersey, based on a drug conviction.[1] He now brings a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition will be denied because it was filed after the expiration of the applicable statute of limitations.

## II.  BACKGROUND

In 2005, Mr. Chang-Cruz pled guilty in the New Jersey Superior Court, Hudson County, to distribution of a controlled substance within 1,000 feet of school property and possession of a controlled substance with intent to distribute. On October 11, 2005, the court sentenced him to probation, which included a condition that he successfully complete an in-patient drug program. Judgment was entered on October 14, 2005. Based on that conviction, on June 9, 2010, Immigration Custom and Enforcement ("ICE") officials arrested Mr. Chang-Cruz and placed him in removal proceedings.

---

[1]  On September 17, 2013, after the government filed its response to the petition, Mr. Chang-Cruz submitted a notice of change of address. He is now incarcerated at the Etowah County Detention Center in Gadsden, Alabama. I assume without deciding that he is in custody pursuant to the challenged conviction and that venue remains proper.

1

On March 18, 2011, Mr. Chang-Cruz filed a post-conviction relief ("PCR") petition in the New Jersey Superior Court, Hudson County. In his PCR petition, Mr. Chang-Cruz argued that he suffered ineffective assistance of counsel during the plea proceedings. Counsel, according to Mr. Chang-Cruz, understood that his biggest concern was possible deportation. Chang-Cruz alleges that he agreed to plead guilty only after counsel had erroneously assured him that there was no risk of deportation as a result of the guilty plea. The PCR petition alleges that, if Mr. Chang-Cruz had known that he would be deported on these charges, he would not have pled guilty and would have insisted on going to trial.

On April 23, 2012, after conducting an evidentiary hearing, the Superior Court denied the PCR petition on the merits. Mr. Chang-Cruz's appeals to the Appellate Division from the denial of PCR were dismissed. (*See* Dkt. Nos. 9-9 & 9-10.)

While the state PCR petition was pending, Mr. Chang-Cruz submitted this petition for a writ of habeas corpus, which is dated October 17, 2012.[2] The grounds are similar to those in the PCR petition. That is, the habeas petition asserts that trial counsel was ineffective when he incorrectly advised him that his plea of guilty would not lead to deportation.

Mr. Chang-Cruz is now subject to an order of removal from this country.

---

[2] This will be deemed the date of filing. Pursuant to the prisoner "mailbox rule," a petitioner's court filing is deemed filed on the date he delivered it to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988). When a court is unable to determine the exact date that a prisoner handed his petition to a prison official for mailing, it will look to the signed and dated certification of the petition. *See Terrell v. Benfer*, 429 F. App'x 74, 75 (3d Cir. 2011) (per curiam) (using date prisoner signed complaint as date he handed it to prison officials for mailing); *Maples v. Warren*, No. 12-0993, 2012 WL 1344828, at *1 n.2 (D.N.J. Apr. 16, 2012) ("Often times, when the court is unable to determine the exact date that a petitioner handed his petition to prison officials for mailing, it will look to the signed and dated certification of the petition."). Logically, that is the earliest date it could have been delivered to prison officials for mailing.

On August 20, 2013, the Court ordered Respondent to file a response to the habeas petition, limited to the issue of the timeliness of Mr. Chang-Cruz's federal habeas petition. On September 10, 2013, Respondent filed a response.

## III. DISCUSSION

The statute of limitations for this § 2254 petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is set forth in 28 U.S.C. § 2244(d), which states:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of –
> (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) The date on which the factual predicate of eth claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year AEDPA limitations period runs from the date a state court judgment becomes final. A judgment becomes final at the conclusion of direct review, or the expiration of time for seeking such review, including the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir.

2000); *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999) (noting that state supreme court's decision became final after ninety days, the deadline for seeking a writ of certiorari from the U.S. Supreme Court).

Mr. Chang-Cruz did not file a direct appeal. Therefore, his conviction and sentence became final on the date that the time for filing a direct appeal expired. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Under the New Jersey rules of court, the time for Mr. Chang-Cruz to file a direct appeal expired forty-five days after the October 14, 2005 judgment, on November 28, 2005. *See* N.J. Ct. R. 2:4-1(a). Accordingly, the AEDPA statute of limitations began to run on that date. Unless its running was tolled or delayed for some reason, the limitations period expired one year later, on November 28, 2006. This habeas petition was filed nearly six years later, on October 17, 2012.

None of the grounds proffered by Mr. Chang-Cruz or considered by the Court render this habeas petition timely. The filing of his PCR petition does not statutorily toll the limitations period. The limitations period did not, as he claims, start to run only when he was picked up by immigration officials in June 2010. His habeas petition is not timely on the ground that it asserts rights only recently recognized by the United States Supreme Court. And he is not entitled to equitable tolling. I consider these arguments in order.

### A. Statutory Tolling

The one-year statute of limitations is statutorily tolled while a properly filed state PCR petition is pending. *See* 28 U.S.C. § 2244(d)(2). A prisoner's application for state collateral review is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis omitted). Such state laws and rules governing filings include "time limits, no matter their form."

*Pace v. DiGigulielmo*, 544 U.S. 408, 417 (2005). Thus, if a state court determines that an application is untimely, then it is not "properly filed," and its pendency does not statutorily toll the one-year AEDPA limitation period. Such a state finding of untimeliness will defeat tolling "regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits." *Carey v. Saffold*, 536 U.S. 214, 226 (2002). However, "if a state court fails to rule clearly on the timeliness of an application, a federal court 'must . . . determine what the state courts would have held in respect to timeliness." *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 85-86 (3d Cir. 2013) (quoting *Evans v. Chavis*, 546 U.S. 189, 198 (2006)).

The only possible statutory tolling here would have resulted from the filing of Mr. Chang-Cruz's state PCR petition. As stated above, however, his conviction became final on November 28, 2005, and he did not file his state PCR petition until some 5 ½ years later, on March 18, 2011. (*See* Dkt. No. 9-5.) Statutory tolling will suspend the one-year AEDPA limitations period while it is running. The filing of a PCR petition, however, does not revive an AEDPA limitations period that has already expired. *See Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004) (state post-conviction relief petition had no effect on tolling because the limitations period had already run when it was filed). The 2011 filing of the PCR petition could not have invoked statutory tolling, because the AEDPA period had long ago expired, in 2006. The PCR filing did not revive this long-expired limitations period or retroactively render this habeas petition timely.

### B. Discovery of the basis of the claim under 28 U.S.C. § 2244(d)(1)(D)

Mr. Chang-Cruz asserts that he could not have known that counsel in his criminal case gave ineffective advice about the immigration consequences of his guilty plea until he was

5

picked up by immigration authorities in June 2010 and subjected to removal proceedings.[3] There is a sort-of accrual doctrine, contained in 28 U.S.C. § 2244(d)(1)(D), which provides that the AEDPA statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

While AEDPA does not define "factual predicate," the Third Circuit has held that "Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if *vital facts* could not have been known." *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) (emphasis in original) (internal quotation marks and citation omitted). "[T]he 'factual predicate' of a petitioner's claims constitutes the 'vital facts' underlying those claims." *Id.*

Mr. Chang-Cruz was aware that he was not an American citizen. He was aware that he had pled guilty to the drug offenses when his conviction became final in 2005. Mr. Chang-Cruz may not have been aware of the precise legal consequences of his guilty plea (potential deportation), but he was aware of the vital facts underlying his claim. Furthermore, Mr. Chang-Cruz was specifically instructed by the state court at the plea hearing that his guilty plea could impact his immigration status.[4] That placed him at least on inquiry notice, even if the precise

---

[3] Actually, this is a two-part argument. If the AEDPA period began running in June 2010, then the PCR filing on March 18, 2011, could potentially have tolled the period. The second part of the argument is moot because, for the reasons expressed herein, the AEDPA period did not start running in June 2010, but long before.

[4] The following colloquy took place between the trial judge and Mr. Chang-Cruz at his plea hearing:

> Q: Has your attorney explained to you that these guilty pleas could impact your immigration status, potentially could result in deportation proceedings undertaking by the – instituted by the Immigration Authorities?
> A: That's correct.
> Q: You understand that?
> A: Yes.

6

consequences of his guilty plea did not materialize until he was picked up by immigration officials in June 2010. These facts do not give rise to a claim of delayed accrual under Section 2244(d)(1)(D). The case law consistently draws a distinction between delayed awareness of vital facts (which will delay accrual), and delayed awareness of the legal significance of those facts (which will not). Thus, for example, in *McKinney v. Gore*, No. 12-1591, 2013 WL 990986, *2 (S.D. Cal. Mar. 13, 2013), the petitioner, who was subject to an enhanced sentence under a recidivist statute, claimed that Section 2244(d)(1)(D) applied to his ineffective assistance of counsel claim. He faulted counsel's advice that he admit a prior "strike" based on a 1980 conviction, claiming that he later discovered that the "admissible evidence in the record of the 1980 conviction was insufficient to qualify as a strike prior under California law." *Id.* The court found Section 2244(d)(1)(D) inapplicable, noting that "Petitioner does not claim he did not know the facts underlying his 1980 conviction or its procedural facts. Rather, the only thing he learned after his 2003 guilty plea was the legal significance of those facts. This is insufficient to claim delayed accrual under section 2244(d)(1)(D)." *Id.*

Similarly, in *McCode v. Ziegler*, No. 10-7407, 2011 WL 7546527, at *3 (E.D. Pa. Apr. 28, 2011), *report and recommendation adopted,* 2012 WL 895768 (E.D. Pa. Mar. 15, 2012), the petitioner claimed that counsel was ineffective at sentencing when he advised that pleading guilty to all four robberies would count as only one "strike" for purposes of a recidivist enhancement. Like Mr. Chang-Cruz here, he claimed that he only learned of the ineffectiveness years later, when he was exposed to an enhanced "three-strikes" sentence after another conviction. The court rejected his argument that this delayed the accrual of the statute of

---

> Q: And understanding that, you still wish to go ahead with these pleas of guilty. Is that correct?
> A: Correct, Your Honor.

(Dkt. No. 9-11 at p. 4-5.)

limitations under Section 2241(d)(1)(D), because petitioner knew the facts or could have discovered them through reasonable diligence.

*Lopez v. Endicott*, No. 06-0668, 2007 WL 4410391, at *4 (E.D. Wis. Dec. 13, 2007), applied the distinction between facts and their legal significance to a claim of ineffective assistance based on failure to advise of the immigration consequences of a guilty plea—the very claim asserted here. *Lopez* found that Section 2244(d)(1)(D) did not apply in that situation, and dismissed the petition as untimely. *See also Ledoux v. Dennehy*, 237 F. Supp. 2d 97, 101 (D. Mass. 2004) ("That Ledoux did not discover until October or November 1999 that his trial counsel's advice was allegedly misleading and inaccurate is certainly unfortunate, but nevertheless, it is unavailing under the language of section 2244(d)(1)(D).").

The Court rejects Mr. Chang-Cruz's argument that the AEDPA statute of limitations should not have begun to run until he was picked up by immigration officials and placed into deportation proceedings. He was aware of the factual predicate of his claim when he was sentenced in 2005, and the running of the limitations period therefore was not delayed under 28 U.S.C. § 2244(d)(1)(D).

## C. Recently recognized, retroactive right under 28 U.S.C. § 2244(d)(1)(C)

Mr. Chang-Cruz also appears to claim that his petition is timely under 28 U.S.C. § 2244(d)(1)(C). That section provides that the one-year limitations period may run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

### 1. Ineffective assistance and *Padilla*

Mr. Chang-Cruz asserts that his claim of ineffective assistance arises from *Padilla v. Kentucky*, 559 U.S. 356 (2010). It was in the 2010 *Padilla* case that the United States Supreme Court first held that counsel had a constitutional duty to inform his client whether a guilty plea carries with it a risk of deportation. *See* 559 U.S. at 374.

The rub is that the Supreme Court has explicitly held that *Padilla* is *not* "retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). After Mr. Chang-Cruz filed his federal habeas petition, the United States Supreme Court decided *Chaidez v. United States*, __ U.S. __, 133 S. Ct. 1103 (2013). *Chaidez* held that *Padilla* does not have retroactive effect, and that a defendant whose conviction became final before *Padilla* cannot benefit from its holding. *See id.* at 1105, 1113.

As noted above, in this case, Mr. Chang-Cruz's conviction became final in November, 2005, when his time for filing a direct appeal expired. That was long before the United States Supreme Court decided *Padillla* on March 31, 2010. *Padilla* has not been held retroactively applicable to cases on collateral review. Accordingly, Mr. Chang-Cruz's reliance on *Padilla* does not render his petition timely under Section 2244(d)(1)(C)

2. Plea offer under *Lafler* or *Frye*

Mr. Chang-Cruz also contends that, under Section 2244(d)(1)(C), the AEDPA limitations period did not begin to run until the U.S. Supreme Court recently decided *Lafler v. Cooper*, __U.S. __, 132 S. Ct. 1376 (2012) and *Missouri v. Frye*, __ U.S. __ 132 S. Ct. 1399 (2012). I assume for present purposes that Chang-Cruz is actually alleging a claim under *Lafler* or *Frye*. These decisions nevertheless would not delay the running of the statute of limitations.

In *Lafler*, counsel's ineffectiveness in the plea negotiation process caused the defendant to go to trial, forgoing a plea deal that would have resulted in a shorter sentence. *See* 132 S. Ct. at

1386. The Supreme Court held that the proper remedy was to order the prosecution to reoffer the plea agreement and allow the state trial court to "exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed." *Id.* at 1391.

In *Frye*, the United States Supreme Court held that "defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be acceptable to the accused." 132 S. Ct. at 1408. Counsel's failure to communicate such a formal offer to the defendant constitutes deficient performance. *See id.* at 1409. Prejudice, however, must be shown:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution cancelling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.

*Id.*

To the extent that *Lafler* and *Frye* may be relevant to this case, Mr. Chang-Cruz still cannot establish that they would delay the date on which the AEDPA limitations period started running. First, it is doubtful whether the Supreme Court in *Lafler* and *Frye* was recognizing a "new" right at all. The Court was primarily dealing with questions of remedy or prejudice. Second, the Supreme Court has not decided that *Lafler* and *Frye*, assuming they are new, are "retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).

10

At least one case in this District has suggested that *Lafler* and *Frye* do not announce a retroactive rule. *See Olivera v. Warden Fort Dix Prison*, No. 12-3064, 2013 WL 1144783, at *4 (D.N.J. Mar. 18, 2013) (Hillman, J.) (§ 2255 case). Cases in other jurisdictions more explicitly hold that this is not a new or retroactive rule, and I agree with them. "Although the Court of Appeals for the Third Circuit has yet to address the issue whether *Lafler* and *Frye* recognized a new right, other courts of appeals . . . have held that neither case (1) created new rights that are (2) retroactively applicable to cases on collateral review." *Sayles v. v. United States*, No. 12-1644, 2013 WL 4522593, at *4 (W.D. Pa. Aug. 27, 2013) (citing *Williams v. United States*, 705 F.3d 293, 294 (8th Cir. 2013); *In re King*, 697 F.3d 1189, 1189 (5th Cir. 2012); *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir. 2012); *United States v. Lawson*, No. 12-3240, 2012 WL 6604576, at *3 (10th Cir. 2012); *In re Perez*, 682 F.3d 930, 933 (11th Cir. 2012); *United States v. Denson*, Crim. No. 08-CR-0365, 2013 WL 588509, at *1 (W.D. Pa. Feb. 11, 2013).

In neither *Lafler* nor *Frye* did the U.S. Supreme Court create a new constitutional right that is retroactively applicable to cases on collateral review. Accordingly, to the extent that either case may apply, neither brings this petition within the scope of Section 2244(d)(1)(C).

### 3. Retroactive application of IIRIRA under *Vartelas*

Mr. Chang-Cruz argues that the Supreme Court, in *Vartelas v. Holder*, ___ U.S. ___, 132 S. Ct. 1479 (2012), also announced a newly recognized constitutional right that renders his petition timely under Section 2244(d)(1)(C).

*Vartelas* was not a habeas case at all, but an appeal from a decision of the Board of Immigration Appeals. The issue was whether to apply the law in force at the time of Vartelas's conviction, or a subsequent amendment to the immigration laws in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (1996).

11

The petitioner, a native of Greece, became a lawful permanent resident of the United States in 1989. *See id.* at 1483. In 1994, he pleaded guilty to a felony. *See id.* In 2003, he traveled to Greece for a one-week visit. Upon his return to the United States, he was treated as an inadmissible alien and placed in removal proceedings. *See id.* As explained by the Supreme Court, "[u]nder the law governing at the time of [petitioner's] plea, an alien in his situation could travel abroad for brief periods without jeopardizing his resident alien status." *Id.* Thereafter, however, in 1996, Congress enacted IIRIRA, which effectively precluded any foreign travel by a lawful permanent resident who had a conviction like that of Vartelas. "Under IIRIRA, such aliens, on return from a sojourn abroad, however brief, may be permanently removed from the United States." *Id.* at 1483 (citing 8 U.S.C. §§ 1101(a)(13)(C)(v) & 1182(a)(2)). The Supreme Court held that IIRIRA "attached a new disability (denial of reentry) in respect to past events," and could not permissibly be read to retroactively add a new, adverse consequence to Vartelas's guilty plea. *See id.* at 1483-84.

*Vartelas* has no bearing on this case. Mr. Chang-Cruz was convicted long after IIRIRA was enacted, and he was not placed into deportation proceedings on reentry after a short trip abroad. *Vartelas* does not make the petition timely under Section 2244(d)(1)(C).

D. Equitable Tolling

Finally, Mr. Chang-Cruz argues that he is entitled to equitable tolling. More specifically, he states that his lack of legal knowledge, as a *pro se* litigant, should excuse his failure to file a timely direct appeal or a timely petition for a writ of habeas corpus.

"Generally, a litigant seeking equitable tolling [of the AEDPA statute of limitations] bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S.

408, 418 (2005); *see also United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008) (not precedential). "Equitable tolling is a remedy which should be invoked 'only sparingly.'" *Bass*, 268 F. App'x at 199 (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))).

The first element of equitable tolling, diligence, has been defined by the Third Circuit as follows:

> The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence. *Holland* [*v. Florida*], 130 S. Ct. [2549,] at 2565 [(2010)]. "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (citing *Jones* [*v. Morton*, 195 F.3d [153,] 160 [(3d Cir. 1999)]. A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case. . . . The fact that a petitioner is proceeding pro se does not insulate him from the "reasonable diligence" inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling. *See Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003).

*Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (internal citations omitted).

The second element of equitable tolling, extraordinary circumstances, may be found where (1) the petitioner has been actively misled by respondent; (2) the petitioner has in some extraordinary way been prevented from asserting his rights; or (3) where the petitioner has timely asserted his rights in the wrong forum. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (citing *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)). However, "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Id.* (citations omitted).

Mr. Chang-Cruz cites his lack of legal knowledge. As a matter of law, however, "[t]he fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or training does not alone justify equitable tolling." *Ross*, 712 F.3d at 799-800 (citations omitted). This argument, at least standing alone, cannot support equitable tolling of the AEDPA statute of limitations. *Accord Dixon v. Bartkowski*, No. 11-3213, 2013 WL 5730152, at *7 (D.N.J. Oct. 21, 2013) ("[L]ack of legal knowledge or legal training does not alone justify equitable tolling.") (citations omitted).

Mr. Chang-Cruz also argues he is entitled to equitable tolling because he did not find out about the immigration consequences of his plea until June 2010, when he was detained by immigration officials and subjected to removal proceedings. Those facts do not evince diligence, and these are not extraordinary circumstances. As previously explained, as early as 2005, Mr. Chang-Cruz had at his disposal the factual predicate giving rise to his claim. The trial court warned him of possible immigration consequences arising from his guilty plea. Mr. Chang Cruz waited over five years, until March 2011, to finally file his state PCR petition.

Neither the petitioner's lack of legal sophistication nor his failure to realize the consequences of known facts rises to the necessary level of diligence or establishes extraordinary circumstances. Under these circumstances, Mr. Chang-Cruz is not entitled to the extraordinary remedy of equitable tolling.

E. Request for a Stay and Abeyance

Mr. Chang-Cruz requests a stay and abeyance of his federal habeas petition pending the outcome of his state PCR petition. (*See* Dkt. No. 1-1 at p. 29.) Because this federal habeas petition is untimely and will be dismissed, the request for a stay and abeyance will be denied as moot.

F. <u>Request for the Appointment of Counsel</u>

Mr. Chang-Cruz has also requested the appointment of counsel. He does not have a constitutional right to counsel in habeas proceedings. *See Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *superseded on other grounds by statute, see* 28 U.S.C. § 2254. However, 18 U.S.C. § 3006A(a)(2)(B) provides that the court has discretion to appoint counsel where "the court determines that the interests of justice so require . . ." In *Reese*, the Third Circuit explained that in determining whether counsel should be appointed, a court "must first decide if the petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims." *Reese*, 946 F.2d at 263-64. In this case, the Court finds that the appointment of counsel is not warranted. The petition must be dismissed at the outset because it is barred by the AEDPA one-year statute of limitations.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case, for the reasons expressed in this Opinion.

## V. CONCLUSION

For the foregoing reasons, the habeas petition will be denied and a certificate of appealability shall not issue. An appropriate order will be entered.

Dated: November 7, 2013

*Kevin McNulty*
KEVIN MCNULTY
United States District Judge